**UNITED STATES of America, Plaintiff,**

**v.**

**Raymond BURCZYK and Hartford Accident and Indemnity Company, Defendants.**

**Civ. A. No. 92–C–186.**

United States District Court, E.D. Wisconsin.

May 13, 1993.

Jack Kaufman, U.S. Dept. of Justice, Washington, DC, for plaintiff.

Thomas W. Godfrey, Godfrey, Braun & Hayes, Milwaukee, WI, for defendants.

***ORDER***

TERENCE T. EVANS, Chief Judge.

This is an action brought to recover an alleged overpayment for compensation to a "standing trustee" in bankruptcy. Cross-motions for summary judgment have been filed along with a stipulation of facts.

From 1987 to 1990, under chapter 13 of the bankruptcy code, Raymond Burczyk served as a "standing trustee" in the Eastern District of Wisconsin. His role as standing trustee was to appear at hearings confirming or modifying chapter 13 plans, to receive payments from chapter 13 debtors, to disburse the money to creditors, and to ensure that timely payments were made. His compensation was fixed each year by order of the Executive Office for the United States Trustees (EOUST) pursuant to 28 U.S.C. § 586(e), as that statute existed at the time. For the fiscal year October 1, 1989, through September 30, 1990, his maximum compensation per annum was $68,757, the salary then in effect for step 1 of grade GS-16 of the general schedule for federal employees. In addition, however, EOUST fixes, pursuant to section 586(e), a "percentage fee," which limits the amount of funds for a standing trustee's expenses and his compensation to no more than 10 percent of all the payments he receives from chapter 13 debtors. Also pursuant to section 586(e)(2)(A), the compensation of a standing trustee cannot exceed 5 percent of the debtor payments he recovers. He pays himself out of the funds he collects from debtors.

During fiscal 1990, Mr. Burczyk accepted payments from debtors, which he then deposited into a trust account. He transferred the "percentage fee"—10 percent of the payments—into a separate "expense account," and paid creditors with the remainder of the funds. From the expense account, he withdrew his operating expenses and his own compensation. Under no circumstances, however, could his compensation exceed the maximum allowed—$68,757 in fiscal year 1990—nor could it exceed 5 per cent of the payments received from debtors. It was his general practice to take approximately 1/12th of his maximum compensation per month. At the end of the year, excess funds in the expense account were transferred to the United States trustee system fund, pursuant to 28 U.S.C. § 586(e)(2). The ideal situation is one in which the percentage fee is set so that it is no greater than the expenses and compensation.

Mr. Burczyk resigned effective April 30, 1990, having served 7 months of fiscal year 1990. During the first 4 months of the fiscal year, he had paid himself 1/12th of his maximum annual compensation. In February, he sent the United States trustee a letter stating his intention to resign effective April 30. In March he took 1/12th of his maximum annual compensation. Then in

April he took $34,811.50, the difference between the compensation he had already taken and his maximum compensation per annum.

He was replaced as standing trustee by another person, who was compensated for the remaining months of the fiscal year.

The $34,811.50 payment did not meet with the approval of EOUST. On October 30, 1990, the United States trustee for the Eastern District of Wisconsin wrote to Mr. Burczyk demanding remittance of $29,112 in excess compensation. Again on November 13, the trustee demanded repayment. When Mr. Burczyk refused, the trustee turned the case over to the United States Department of Justice and this case was filed.

The only issue is whether the payment was proper. Mr. Burczyk seems to see himself as a person who works on commission, with an upper limit to the amount of the commission he can be paid in any given year. Under that view, it does not matter how many months he worked as long as he collected sufficient funds so that the $68,757 he was paid did not exceed 5 percent of the debtor funds he collected, which it did not. EOUST, on the other hand, sees him more as a kind of salaried employee, like any other GS–16, who must work one full year to earn one full year's pay. Then, of course, if he were to quit, as he did, in the middle of the year, he would receive the salary he earned to that point, and his replacement would receive the rest, so that the total salary for the position would not be more than $68,757 for the fiscal year.

For a number of reasons, I find that Mr. Burczyk must repay the money. Although maybe it is conceivable to read the statute the way Mr. Burczyk does, it is an illogical and strained reading. It is a reading which arises only because compensation is paid out of funds which the standing trustee generates. However, that the standing trustee generates the funds does not turn his employment into private enterprise. The trustee works under statutory guidelines. He surely cannot recover enough to cover his maximum annual salary in two or three months and then quit working for the year.

In addition, the agency's interpretation of the statute is entitled to some deference. Analysis of the question of deference to an agency's interpretation must follow the scheme set out in *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, there must be a determination as to whether Congress has directly addressed the issue. In this case, the answer is a qualified no. The statute does not state directly that "annual compensation" is paid in exchange for a full year's work. I could not, however, vigorously disagree with someone who might think that the intent is clear: that Congress fully expected a full year's work in exchange for "annual compensation."

Congress's use of the analogy to the general schedule is important. A GS–16 employee is entitled to a certain amount of compensation per year; however, it is doled out in periodic increments. No GS–16 employee thinks he can quit in April and be paid his entire annual salary. The person who replaces him will get a portion. The salary goes with the position, not the person.

Assuming the intent is not clear, however, the next step in the *Chevron* analysis is to determine whether the agency's view is based on a permissible construction of the statute. Clearly it is. Even if Mr. Burczyk, at an earlier time, seems to have viewed his compensation as did EOUST. Up until the month before his resignation, he paid himself at a rate of 1/12th the annual maximum amount per month.

I find that the excess compensation must be repaid. Mr. Burczyk must repay $29,112, and Hartford, as the surety, is also responsible for the payment.

IT IS THEREFORE ORDERED that the motion of the defendants is DENIED.

IT IS FURTHER ORDERED that the motion of the plaintiff is GRANTED. The clerk is ordered to enter judgment for the

United States and against the defendants for $29,112, plus costs and interest.